**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X

PABLO MOLGORA

                              **Plaintiff,**

          -against-

SHARINN & LIPSHIE, P.C.
HARVEY SHARINN
AMANDA MORENO
COLLINS ASSET GROUP LLC

                         **Defendants.**
-------------------------------------------------------------------X

**Case No.:**

**COMPLAINT**
**AND JURY DEMAND**

       Plaintiff Pablo Molgora bring suit against Defendants for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*., N.Y. Gen. Bus. Law § 349, and the Fair Credit Reporting Act ("FCRA"), 15 USC § 1681 *et seq*.

**SUMMARY OF CLAIMS**

1.     Plaintiff Pablo Molgora brings suit against a debt collection law firm and its attorney, as well as a putative judgment creditor, for executing an information subpoena, sending a collection letter, and seeking to collect on a judgment that they knew or should have known had been vacated years prior.

2.     In 2008, Collins Financial Services, Inc. ("CFS") sued Mr. Pablo Molgora in Bronx Civil Court for a debt that Mr. Molgora did not owe, and obtained a default judgment by use of a false affidavit of service.

3.     Several years later, Mr. Molgora discovered that there was a default judgment against him when he received a collection letter from Precision Recovery Analytics, Inc. ("PRA"), the putative assignee of the judgement. He filed an Order to Show Cause and was able to vacate the

judgment and have the case dismissed. Mr. Molgora believed he was free of the matter.

4.      Over four years later, on May 24, 2016, the debt collection law firm Sharinn & Lipshie, P.C. ("S&L") served an information subpoena on Mr. Molgora's in an attempt to collect on the vacated judgment. The attorney executing the subpoena took no steps to determine the validity of the putative judgment. S&L sent a copy of the information subpoena with a collection letter a few weeks later. S&L was collecting on behalf of putative judgment assignee Collins Asset Group, LLC, ("CAG").

5.      Mr. Molgora suffered serious anxiety and emotional distress at the prospect of being forced to pay the invalid judgment.

6.      Mr. Molgora immediately sent a copy of the order vacating the default judgment to S&L.

7.      A few weeks later, CAG pulled Mr. Molgora's credit report in an attempt to collect the vacated judgement. When it pulled Mr. Molgora's credit report, CAG knew or should have known that the judgment was vacated, and that it therefore had no legal authority to pull the credit report.

## JURISDICTION AND VENUE

8.      This action arises under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, ("FDCPA") and the Fair Credit Reporting Act, 15 USC § 1681 *et seq*. Because the dispute involves predominant issues of federal law under the FDCPA, the Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

9.      The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law claims because said claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States

Constitution. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

10.     Venue in this federal district is proper because all or a substantial part of the events or omissions giving rise to their claims occurred in Bronx County, New York.

## PARTIES

11.     Plaintiff Pablo Molgora (hereinafter "Mr. Molgora" or "Plaintiff") is an individual currently residing in Bronx County, New York.

12.     Defendant Sharinn & Lipshie, P.C., ("Sharinn & Lipshie," or "S&L"), a domestic corporation, is a debt collection law firm with its principal place of business located at 50 Charles Lindbergh Blvd., Ste. 604, Uniondale, NY 11553. Said Defendant engages in business in New York, and this suit arose out of said Defendant's business in New York.

13.     S&L is a debt collection law firm that collects upon tens of thousands, if not hundreds of thousands, of putative defaulted consumer debts, including putative judgments, by sending collection letters, filing collection lawsuits, and by issuing information subpoenas, bank restraints, and income executions. S&L is a debt collector

14.     Defendant Harvey Sharinn ("Mr. Sharinn") is an individual who, upon information and belief, is a resident of the State of New York. Harvey Sharinn is an attorney and named partner at Sharinn & Lipshie. He regularly signs (or purports to sign) thousands of collection lawsuits, income executions, information subpoenas and bank restraints. He has his name affixed to thousands of collection letters. Mr. Sharinn is a debt collector.

15.     Mr. Sharon personally engaged in the debt collection violations committed by S&L while doing business in New York. Therefore, S&L and Sharinn are collectively the "S&L Defendants."

16.     Defendant Amanda Moreno is an individual who, on information and belief, is a resident of the State of New York. Moreno is the managing attorney at Sharinn & Lipshie, S&L's New York office is her principle place of business. She regularly signs (or purports to sign) thousands of collection lawsuits, income executions, information subpoenas and bank restraints. Ms. Moreno is a debt collector.

17.     Defendant Collins Asset Group, LLC ("CAG") is a foreign corporation organized and existing under the laws of the State Delaware with its principal place of business in Austin, Texas. Said Defendant engages in business in New York, and this suit arose out of said Defendant's business in New York.

18.     Defendant Collins Asset Group, LLC ("CAG") purchases putative defaulted consumer debt, including putative judgments, and seeks to collect on putative defaulted consumer debt directly and through debt collection law firms such as S&L, and did so as to Mr. Molgora.  CAG regularly collects debts alleged to be owed to another, and that is its primary (and indeed exclusive) function. CAG is a debt collector as defined by the FDCPA.

19.     The S&L Defendants were the agent for CAG acting within the scope of its agency seeking to collect the (and non-existent) judgement from Mr. Molgora.  Therefore CAG is jointly and severally liable for the acts of the S&L Defendants. Therefore where this complaint references liability of the S&L Defendants, it applies equally as to CAG.

## STATEMENT OF FACTS

*Collins obtains a default judgment against Mr. Molgora based on false representations.*

20.     On or about March 3, 2008, Mr. Molgora was sued by Collins Financial Services, Inc. ("CFS") for a putative debt in *Collins Financial Services, Inc., Assignee in Interest to American Investment Bank, N.A. v. Pablo Molgora*, Case No: CV-016858-08/BX in Bronx Civil Court. *See*

4

**Exhibit A**.[1]

21.     CFS sought to collect a putative debt of $2,315.50, which it asserted was originally owed to American Investment Bank.

22.     CFS purported to be the owner of the debt.

23.     CFS's counsel in the collection lawsuit was Malen & Associates, P.C.

24.     Mr. Molgora was never served with the lawsuit.

25.     Instead, CFS filed a false affidavit of service with the Court dated May 1, 2008. *See* **Exhibit B**.

26.     In that affidavit, David Levine (DCA License No. 778982) swore before a notary that on April 14, 2008 he served the summons and complaint on Mr. Molgora by delivering and leaving the documents with "Mr. Smith co-tenant" at 2353 Beaumont Ave., Apt. F7, Bronx, NY 10458. Mr. Levine described "Mr. Smith" as a 35 year old brown-skinned man with black hair who was approximately 5'7 tall and weighed 175 pounds.

27.     Mr. Levine further attested that "Mr. Smith" told him that Mr. Molgora was neither in the military nor dependent on a person in the military.

28.     Mr. Levine further attested that on May 1, 2008, he mailed a copy of the summons and complaint to Mr. Molgora at the same address, 2353 Beaumont Ave., Apt. F7, Bronx, NY 10458.

29.     Mr. Molgora never received a copy of the collection lawsuit from David Levine or any other person.

30.     Further, the process server, David Levine, was disciplined by the New York City Department of Consumer Affairs in 2009 for misconduct in allegedly serving process.

31.     In June 2008, CFS filed an application for a default judgment. *See* **Exhibit C**.

32.     Based on the false representations in the affidavit of service, CFS obtained a default

---

1 All exhibits referenced in this complaint are incorporated by reference in their entirety.

judgment on July 15, 2008 against Mr. Molgora for $2,530.71, including $125.00 in costs and $75.36 in interest.

### *Mr. Molgora vacates the judgment against him and the case is dismissed.*

33.     Mr. Molgora never received a copy of the summons and complaint, or the default judgment by mail or in any other manner

34.     Mr. Molgora learned about the default judgment in 2011 when Precision attempted to execute on the judgment.

35.     Anxious to stop the execution, Mr. Molgora used the Civil Court of the City of New York's free DIY Forms program to draft a *pro se* Order to Show Cause ("OSC") to vacate the default judgment for lack of service. Mr. Molgora filed the OSC on September 19, 2011 in Bronx Civil Court. *See* **Exhibit E.** As directed by the court, Mr. Molgora served a copy of the OSC on the attorney of record, Malen & Associates, P.C.

36.     Until shortly before the filing of the OSC, Mr. Molgora did not know and could not reasonably have known about the collection lawsuit or the default judgment.

37.     In his affidavit in support of the OSC, Mr. Molgora stated that he was not aware of the suit or the judgment until the week prior, when he received a garnishment notice from a New York City Marshal.

38.     Mr. Molgora further stated that he had never been served with a copy of the Summons and Complaint, and that the Court lacked personal jurisdiction over him because the Summons and Complaint were improperly served.

39.     Mr. Molgora also filed a proposed Answer denying the allegations in the complaint.

40.     Deeming the application meritorious, the Court, Judge Raul Cruz presiding, signed the OSC, ceasing all collection attempts and setting a hearing for October 6, 2011.

41.     On the October 6, 2008 return date of the OSC, the Court, Judge Raul Cruz presiding, vacated the judgment against Mr. Molgora and ordered that "[a]ny liens, levies, restraints or executions issued by plaintiff against any property or bank accounts of the defendant is vacated and any funds including fees in the possession of the plaintiff, City Marshal or any other agent shall be returned to defendant forthwith." *See* **Exhibit F**. The matter was adjourned to January 18, 2012 for a pretrial conference

42.     As directed by the court, Mr. Molgora served a notice of entry of the order vacating the default judgment on Precision's attorney of record, Malen & Associates, P.C. on October 11, 2011. *See* **Exhibit G**.

43.     On November 11, 2008 Mr. Molgora filed a motion to dismiss the complaint.

44.     The application was granted on default and the complaint was dismissed on December 19, 2011. *See* **Exhibit H**.

45.     For more than eight years following the dismissal of the complaint, Mr. Molgora did not hear anything from anyone relating to the collection lawsuit or vacated judgment. Mr. Molgora assumed the matter was resolved.

**Unbeknownst to Mr. Molgora, Defendants file a notice of "assignment" (of the non-existent judgment) and substitution of counsel in the dismissed collection lawsuit**

46.     Unbeknownst to Mr. Molgora, Defendants filed "assignments" of the (non-existent) judgment, and a substitution of counsel.  These documents were never served on Mr. Molgora, by Defendants or anyone else.

47.     Mr. Molgora did not know, nor could he reasonably have known, about the putative assignments of the (non-existent) judgment or substitution of counsel until he requested a copy of the court file after receiving the collection letter and information subpoena, discussed further in the next section, from the debt collection law firm Sharinn & Liphsie.

48.     On September 1, 2015 the debt collection law firm Sharinn & Lipshie, P.C. ("S&L") filed in civil court a notice of substitution of counsel for Malen & Associates, P.C for the discontinued collection lawsuit.

49.     While the substitution itself does not appear to be in the court file, apparently the firm that substituted in the (now discontinued) case was S&L as the court's ecourts website shows S&L as counsel for plaintiff. S&L is also listed as the attorney for the plaintiff in the Case Summary available from the civil clerk's office in the collection lawsuit.

50.     On November 22, 2010 an "assignment of judgment" was filed contending that on October 6, 2010 the (vacated) judgment was assigned from CFS to Precision Recovery Analytics, Inc. *See* **Exhibit D**.

51.     Interestingly, according to the New York Secretary of State, CFS changed its name to Precision Recovery Analytics, Inc. on February 10, 2010. *See* **Exhibit I.**

52.     In fact, Mr. Molgora has never received a notice of assignment from anyone at any time alleging an assignment of the putative debt that formed the basis of the collection lawsuit, the judgment that was the result of the suit, or any post-judgment collection activity.

> ### *Four years later, the S&L Defendants issued a subpoena and sent a collection letter seeking to collect to non-existent judgment.*

53.     Unbeknownst to Mr. Molgora, or about May 24, 2016, the S&L Defendants sought to collect on the (vacated) judgment by issuing an Information Subpoena against Bank of America, where Mr. Molgora has his bank account.  The information subpoena was personally signed by Mr. Sharinn, and falsely contended there was a judgment against Mr. Molgora. *See* **Exhibit J.**

54.     Bank of America executed a response to the Information Subpoena on or about June 14, 2016. Bank of America asserted that Mr. Molgora's account was below the exempt amount and

therefore not subject to restraint. The bank's response to the subpoena disclosed Mr. Molgora's personal information, such as bank account numbers, account balances, and known places of employment.

55.     On June 25, 2016 Mr. Molgora received an envelope in the mail from the S&L Defendants.

56.     This was the initial written communication Mr. Molgora received related to the collection lawsuit since he had the collection lawsuit dismissed eight years earlier.

57.     The envelope contained three documents, and those documents constituted the initial communications by the S&L Defendants to Mr. Molgora in an attempt collect on the putative judgment.

58.     First, oddly, the envelope contained the Information Subpoena issued by the S&L Defendants, with the information provided by the bank. By serving the Information Subpoena on Mr. Molgora, the S&L Defendants made a series of false, deceptive, and misleading representations to Mr. Molgora. The S&L Defendants represented that they held a valid, enforceable judgment when the judgment in fact was vacated and the case dismissed. By signing and delivering the Information Subpoena to Mr. Molgora, the S&L Defendants impliedly represented to Mr. Molgora that they had performed a "meaningful attorney review" and had concluded they had a legal right to issue the subpoena.

59.     The Information Subpoena also falsely suggested to the least sophisticated consumer that the S&L Defendants could, and did, attempt to restrain Mr. Molgora's bank account. In a bold red stamp, the document stated the account was "Not Held," because the balance was "Below [the] Exempt Amount." This of course implies that the S&L Defendant could have restrained the bank account had it contained more money, and perhaps would restrain the account in the future

of additional funds were deposited. Also, the subpoena demands the bank to "set forth the amount held as a result of the restraint," suggesting to the least sophisticated consumer that the information subpoena could itself restrain Mr. Molgora's account.2

60.     Second, the envelope contained a collection letter dated June 20, 2016 under the letterhead of the law firm and with the signature block of attorney Sharinn. *See* **Exhibit K**. The "Re:" section of the letter listed the caption of the collection lawsuit. The letter claimed that the "balance" due $3,701.70. This is incorrect of course as there was no judgment and the case was dismissed.

61.     Third, the envelope contained a copy of the judgment itself.  *See* **Exhibit L**. By sending Mr. Molgora a copy of the judgment, Defendants clearly and directly misrepresented to Mr. Molgora that the judgment was valid and enforceable.

62.     As discussed further below, the S&L Defendants violated 15 U.S.C. § 1692g(a) of the FDCPA by not disclosing important rights and information in their initial written communication, or within 5 days thereafter, that Congress deemed essential to be promptly provided.

63.     Panicked, Mr. Molgora on or about June 27, 2016 called S&L to inform them that they were collecting on a vacated judgment. That same day Mr. Molgora faxed S&L a letter with supporting documentation that the judgment was vacated and the case was discontinued.

64.     The S&L Defendants did not communicate with Mr. Molgora after receiving the orders vacating the judgment and dismissing the case, and the debt collection activity continued.

### *CAG impermissibly pulled Mr. Molgora's credit report after apparently being informed by the S&L Defendants the judgment was vacated*

---

2 More generally, the S&L Defendants in the past have issued a two page form to a bank, one page entitled information subpoena, the other page entitled bank restraint.

65.     On July 26, 2016, CAG pulled Mr. Molgora's credit report, obtaining with no legal right sensitive, private personal and financial information.

66.     The following facts create a reasonable inference that the S&L Defendants were collecting the (vacated) judgment for CAG.

67.     Given that just one month passed between when the S&L Defendants sent Mr. Molgora the Information Subpoena, collection letter, and judgment and the date that CAG pulled Mr. Molgora's credit report, it appears that the S&L Defendants were acting on behalf of CAG.

68.     Further, that the S&L Defendants were acting as the agent of CAG is suggested by the relationship among all of the putative judgment creditors. According to various government filings, the debt collector who filed the collection lawsuits, Collins Financial Services, Inc. ("CFS") changed its name to Precision Recovery Analytics, Inc. ("PRA") on January 20, 2010. An individual named Walt Collins was a principle at CFS, and is now a principle at CAG.  All of the entities have a principle place of business in Austin, Texas.

69.     CAG is charged with the knowledge of its agent, the S&L Defendants. Therefore, when CAG pulled Mr. Molgora's credit report to collect on a judgement it knew or should have known was vacated, CAG willfully violated the Fair Credit Reporting Act.

70.     If the S&L Defendants did not actually inform CAG the judgment was vacated after Mr. Molgora sent the S&L Defendants a copy of the order vacating the judgment, then the S&L Defendants would have violated, inter alia, 15 U.S.C. § 1692e(8) by providing false credit information regarding Mr. Molgora to CAG—namely, that the judgment against Mr. Molgora was valid.

**The S&L Defendants did not perform a meaningful attorney review.**

11

71.     The fact that the judgment against Mr. Molgora was vacated is publicly and easily accessible.

72.     A simple search on the Unified Court System's eCourts website (www.courts.state.ny.us/ecourts ) reveals that the judgment in *Collins Financial Services, Inc., Assignee in Interest to American Investment Bank, N.A. v. Pablo Molgora*, Case No: CV-016858-08/BX was vacated on October 6, 2011 and that the case was dismissed on December 19, 2011. *See* **Exhibit M**.

73.     In other words, anyone with even the slightest knowledge of the court's publicly available computer records would have known (a) that as of October 6, 2011, there was no judgment against Mr. Molgora in CV-016858-08/BX, and (b) that as of December 19, 2011, the case itself was no more, having been dismissed.

74.     Sewer service is notoriously widespread in New York City consumer credit suits.[3]

75.     There was therefore a strong possibility, which Defendants knew about, that the judgment against Mr. Molgora had been improperly obtained via sewer service – and, in fact, it was so

---

3 For example, the Honorable Denny Chin, federal district judge for the Southern District of New York, recently made the following "findings of fact" in certifying a class action alleging a scheme to fraudulently obtain default judgments against more than 100,000 New York consumers:

I make the following findings of fact based upon the depositions, declarations, and exhibits submitted by the parties in connection with this motion [for class certification]….

Between January 2007 and January 2011, Samserv defendants performed service of process in 94,123 cases filed by Mel Harris in New York City Civil Court, 59,959 of which were filed on behalf of Leucadia defendants. Records maintained by defendants reveal hundreds of instances of the same process server executing service at two or more locations at the same time. On 517 occasions, defendants Mosquera, Lamb, and Andino, alone, claimed to be have performed service in two or more places at the same time. For example, Mosquera claimed to have performed service at four different locations at 1 p.m. on September 17, 2008. Lamb claimed to have performed service at two different locations at 6:59 p.m. on November 28, 2007. Andino claimed to have performed service at nine different locations at 4 p.m. on March 29, 2007. There were also many other occasions where multiple services were purportedly made so close in time that it would have been impossible for the process server to travel from one location to the other as claimed.

These facts, together with the high number of default judgments obtained by defendants, provide substantial support for plaintiffs' assertion that defendants regularly engaged in sewer service.

*Sykes v. Mel Harris & Associates, LLC*, 285 F.R.D. 279, 283-84 (S.D.N.Y. 2012) *aff'd sub nom. Sykes v. Mel S. Harris & Associates LLC*, 780 F.3d 70 (2d Cir. 2015)(citations to record omitted).

obtained.

76.     Defendants seek to circumvent the court process. Defendants improperly obtained this judgment via sewer service, defaulted on two court appearances when Mr. Molgora sought to defend himself in the lawsuit, yet they nevertheless attempted to enforce a vacated judgment to which they have no right.

77.     Further, by signing and sending the Information Subpoena to Bank of America for execution against Mr. Molgora, Sharinn and the law firm implicitly represented to Mr. Molgora that they had performed a "meaningful review" of the facts and circumstances of the file.

78.     However, neither Mr. Sharinn nor S&L performed a meaningful review of Mr. Molgora's case.

79.     If Mr. Sharinn and the law firm had performed a meaningful review of Mr. Molgora's case, they would have a) checked eCourts to determine whether an order to show cause had been filed or granted; b) obtained and reviewed the court file; c) determined whether notices of assignments of the putative judgment from CFS to PRA to CAG, as well as any other intermediary putative judgment assignee, had ever been sent to the consumer; and/or d) reviewed the prior attorney's file or the court file.

80.     These steps are the bare minimum for an attorney review, as S&L itself has confirmed.

81.     On January 17, 2014, S&L's managing attorney, Amanda Moreno ("Moreno") was deposed in connection with a Fair Debt Collection Practices Act lawsuit against another debt collector. *See* **Exhibit N**.

82.     Moreno asserted under oath that S&L's policy is not to take action on a collection lawsuit commenced by another law firm until S&L has copied the entire court file or been forwarded the pleadings. *See* Exhibit K, p. 75 ¶¶ 11-18, 19-25; p. 77 ¶¶ 12-15.

83.    The purpose of this alleged policy, Moreno said, is to adhere to "a meaningful involvement standard where [they] review what is done by other attorneys to make sure that [they]'re following in the correct footsteps." *See* Exhibit K, p. 78, ¶¶ 8-12.

84.    That is, in the words of S&L's own managing attorney, a meaningful review of a case begun by another attorney, which must be undertaken before taking any action on it. Such a review requires, at minimum, an examination of the underlying court file.

85.    Here, Mr. Sharinn and S&L were not the original attorneys who had obtained the judgment against Mr. Molorga, and a full eight years had elapsed since CFS obtained the judgment through its prior attorneys.

86.    Knowing these facts and their own policy of meaningful attorney involvement, any meaningful attorney review would require reviewing the underlying court file or at the very least conducted an eCourts search.

87.    Had they taken the fifteen seconds necessary to type the index number into the ecourt's website, Mr. Sharinn and S&L would have immediately seen that the judgment against Mr. Molgora had been vacated and that the lawsuit had been dismissed.

88.    In sum, they would have quickly understood they had no legal basis to restrain and garnish Mr. Molgora's bank account.

89.    Further, had they checked their client's file, they would have known that no notice of assignment had ever been sent to Mr. Molgora.

90.    Instead, Mr. Sharinn and S&L conducted no meaningful review of the lawsuit case against Mr. Molorga prior to executing the Information Subpoena and Restraining Notice.

91.    In the alternative, if Mr. Sharinn and S&L actually did perform a meaningful attorney review, then they intentionally signed and issued a restraining notice pursuant to a nonexistent

judgment, and upon which no notice of assignment had ever been sent.

### *The S&L Defendants and CAG failed to provide a 1692(g) notice*

92.    When the S&L Defendants issued the information subpoena and bank restraint, they knew and intended that the bank would forward a copy of the same to Mr. Molgora as required by state law.

93.    The information subpoena and the bank restraint were the initial communication from S&L to Mr. Molgora regarding the collection lawsuit and the sewer service judgment.

94.    However, the S&L Defendants did not provide Mr. Molgora the disclosures required by the FDCPA, specifically 15 USC 1692g(a), either in the initial communication or within 5 days of the initial communication.  These disclosures are particularly important here. Had the S&L Defendants provided the required disclosure before executing on the nonexistent judgment, Mr. Molgora would have been able to invoke his rights under 15 USC 1692g(b) to send a written dispute and demand that Precision and the S&L Defendants cease collections, verify the validity of the vacated judgment, and provide a copy of the judgment.  Had Mr. Molgora had the opportunity to invoke his rights in this way, it is possible that a meaningful investigation by Precision and S&L, including searching for and providing a copy of the putative judgment, would have disclosed that the judgment had been vacated.

### **Defendants' actions inflicted damages on Mr. Molgora**

95.    When Mr. Molgora learned that S&L was attempting to execute on the same judgment that had been vacated in 2011, he became extremely upset.

96.    Mr. Molgora received the letter and Information Subpoena on Saturday, June 25, 2016. He opened the envelope and felt as if he were going to have a heart attack. The letter and information subpoena were very unexpected and Mr. Molgora was confused and disturbed by the

fact that S&L had obtained personal information about him, such as his new address, the balance in his bank account, and his social security number.

97.     Mr. Molgora found the letter threatening and felt powerless and humiliated in the face of it.

98.     Because Mr. Molgora opened the letter on a Saturday, he was unable to address his concerns until two days later. He spent the weekend in turmoil, worried that he would again be garnished for the putative debt.

99.     Mr. Molgora lives paycheck to paycheck and relies on his income and the money in his bank account to pay for rent, electricity, and basic necessities.

100.    That Monday, June 27, Mr. Molgora had to take off work to go to court and retrieve the court file. He was so distraught that he was unable to return to work after he was finished retrieving the court file.

101.    When Mr. Molgora realized that the case remained dismissed and the judgment vacated, he was outraged that S&L was able to obtain so much personal information without having any legal right to it.

102.    Mr. Molgora immediately called S&L, obtained their fax number, and faxed them the case summary.

103.    The stress of Defendants' unjust and unjustified actions caused Mr. Molgora to suffer anger, frustration, anxiety, and other emotional distress.

104.    Mr. Molgora had been shocked there was a judgment against him when he first learned about it, but believed he had long since dealt with it. The attempted restraint of his bank account revived this anxiety and caused him to lose faith in the court system.

105.    Mr. Molgora is divorced and lives alone. He slept poorly over the next few weeks,

concerned that S&L would continue its unlawful quest to execute on the vacated and improperly obtained judgment.

106. For several weeks following the receipt of the letter and information subpoena, Mr. Molgora had trouble sleeping, tossing and turning, replaying the situation and feeling increasingly anxious, frustrated, and angry.

## FIRST CLAIM FOR RELIEF

### *Violations of the Fair Debt Collection Practices Act*

107. Plaintiff repeats and realleges each and every allegation contained in the previous paragraphs as though fully set forth herein.

108. Defendants attempted to collect on a judgment against Mr. Molgora that had been vacated in a debt collection lawsuit that had been dismissed. In doing so, Defendants violated multiple sections of the FDCPA.

109. The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e); see also *Hamilton v. United Healthcare of La., Inc.*, 310 F.3d 385, 392 (5th Cir. 2002) ("Congress, through the FDCPA, has legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and clearly intended the FDCPA to have a broad remedial scope.").

110. Congress designed the FDCPA to be enforced primarily through private parties – such as plaintiff – acting as "private attorneys general."  See S. Rep. No. 382, 95th Con., 1st Sess. 5, ("The committee views this legislation as primarily self-enforcing; consumers who have been subject to debt collection abuses will be enforcing compliance"); *Jacobson v. Healthcare Fin.*

*Servs.,* 516 F.3d 85, 91 (2d Cir. 2008) ("In this way, the FDCPA enlists the efforts of sophisticated consumers like [plaintiff] as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others.").

111. The obligation Defendants allege is owed to them is a "debt" as defined by 15 U.S.C. § 1692a(5) because it derives from a putative credit card account that was used primarily for family, personal or household purposes.

112. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) because Plaintiff was alleged to owe a "debt."

113. CAG is a "debt collector" because it regularly purchases charged-off consumer accounts in bulk from putative original creditors, or purchases the right to collect debts. CFS is a "debt collector" because it purchases charged-off consumer accounts in bulk from putative original creditors, or purchases the right to collect debts that are already in default, then attempts to collect on them using the mails and telephone.

114. Defendant S&L is a law firm whose principal purpose is the collection of debts. It regularly collects debts allegedly owed by consumers to others, through sending collection letters and other correspondence, filing lawsuits, and using post-judgment remedies including income executions and bank account restraints. S&L's firm website is entitled "collectthedebt.com."

115. S&L is a "debt collector" as defined by the FDCPA, 15 U.S.C. §1692a(6).

116. Defendant Harvey Sharinn is the president of S&L and personally engages in the above mentioned activities carried out by his firm. Like his firm, he regularly collects and attempts to collect debts owed or asserted to be owed to another by all the mechanisms enumerated above. Sharinn personally signed the Restraining Notice that caused Mr. Molgora's bank account to be

restrained, and his name appears on the signature line on the collection letter.

117.    Sharinn is a "debt collector" as defined by the FDCPA, 15 U.S.C. §1692a(6).

118.    Amanda Moreno is also a debt collector because she supervisors, directs, and manages the debt collection litigation apparatus for S&L.

119.    Defendants materially violated the following sections of the FDCPA: 15 U.S.C. §§1692c, 1692e, 1692f, 1692g. By way of example and not limitation Defendants violated the FDCPA by taking the following actions in an attempt to collect a debt or in connection with an attempt to collect a debt: failing to provide Mr. Molgora with required information about an alleged debt in response to his request for verification; using false, deceptive or misleading representations or means; misrepresenting the character, amount, or legal status of the debt; misrepresenting the services rendered or compensation which may be lawfully received; making the false representation or implication that any individual is an attorney or that any communication is from an attorney; threatening to take and actually taking an action prohibited by law; using any false, deceptive or misleading representations or means; using unfair or unconscionable means; communicating improperly with a third party; and collecting or seeking to collect any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

120.    Defendants' violations of 15 U.S.C. §1692, *et seq*., render it liable to Plaintiff.

## SECOND CLAIM FOR RELIEF
### *Violations of N.Y. Gen. Bus. Law §349*

121.    Plaintiff repeats and realleges each and every allegation contained in the previous paragraphs as though fully set forth herein.

122.    New York General Business Law Section 349(a) prohibits "deceptive acts or practices in

the conduct of any business, trade, or commerce, or in the furnishing of any service in this state…"

123.    An individual "injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions." N.Y. Gen. Bus. Law § 349(h). An individual so injured may also be awarded treble damages and punitive damages.

124.    Defendants violated N.Y. Gen. Bus. Law § 349 by engaging in deceptive acts and practices in the conduct of their businesses that caused specific harm to Mr. Molgora and broadly impact consumers at large.

125.    Defendants attempted to collect on a judgment that had been vacated and an action that had been dismissed.

126.    Defendants falsely, deceptively, and misleadingly represented to Mr. Molgora and to Bank of America that they had the right to take any legal or collection actions.

127.    Defendants S&L and Sharinn sought to collect on a vacated judgment without performing any meaningful attorney review. Yet they falsely, deceptively, and misleadingly represented implicitly that they had, in fact, conducted such a review, by issuing to Bank of America a restraining notice and information subpoena that were then sent to Mr. Molgora by Bank of America.

128.    On S&L's own acknowledgement, a meaningful review would have entailed conducting a brief public records search on eCourts and examining the underlying court file. Had it done this, it would have seen that the judgment was vacated and the underlying matter dismissed.

129.    Defendants have engaged in a pattern of attempting to collect on judgments assigned *en masse* to S&L for collection with no prior review and no meaningful attorney review by S&L.

S&L is a firm with only three attorneys, including Sharinn, but files thousands of collection lawsuits and collects on tens of thousands of putative judgements each year.  This enormous volume coupled with the use of mass-produced forms also suggests a lack of meaningful attorney review.

130.    Their deceptive conduct towards Mr. Molgora is, therefore, the type of conduct that has a broad impact on consumers at large.

131.    Defendants knew or should have known – based on records readily available to the public on the Internet, information in the court file, and Mr. Molgora's written dispute – that they were attempting to collect on a judgment that had been vacated and an underlying lawsuit that had been dismissed.

132.    That the relevant steps may be taken in a matter of minutes and that S&L's own managing attorney has noted their importance show a high degree of moral culpability. Defendants' violations were willful and knowing, or, at minimum, evidence a conscious and reckless disregard for basic fairness and for the law.

133.    Defendants' wrongful and deceptive acts caused injury and damages to Plaintiff.

134.    Defendants' acts have caused injury and damages to Mr. Molgora, including, time wasted in disputing a non-existent judgment; the public embarrassment and humiliation of having a false judgment reported to his bank; lost wages; and emotional distress.

135.     As a direct and proximate result of Defendants' violations of N.Y. Gen. Bus. Law § 349, Plaintiff suffered compensable harm and is entitled to preliminary and permanent injunctive relief, and to recover actual, treble, and punitive damages, together with costs and attorney's fees.

**Third Claim For Relief**

**Violations of the Fair Credit Reporting Act (Against Collins Asset Group LLC Only)**

136.    Mr. Molgora repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

137.    The commonly used term "credit reporting agencies" is used interchangeably in this complaint with the technical definition of that same term used by the FCRA, "consumer reporting agencies."

138.    Mr. Molgora is a "consumer," as defined by the Fair Credit Reporting Act ("FCRA"), 15 USC § 1681a(c) because she is an individual.

139.    Collins Asset Group, LLC is a "person" as defined by the FCRA, USC § 1681a(b).

140.    Collins Asset Group, LLC obtained information regarding Mr. Molgora from a "consumer reporting agency," as defined by the FCRA, 15 USC § 1681a(f).

141.    A "consumer reporting agency" is commonly known as a "credit reporting agency" and includes, without limitation, such companies as Experian, Equifax, and TransUnion.

142.    Collins Asset Group, LLC obtained documents (whether in written or electronic form) from one or more credit reporting agencies regarding Mr. Molgora, and said documents are "consumer report[s]," as defined by the FCRA, 15 USC § 1681a(d).

143.    A "consumer report" is commonly known as a "credit report."

144.    Collins Asset Group, LLC requested, obtained, used and/or disseminated the consumer reports of Mr. Molgora, or information contained therein, without any of the permissible purposes or uses enumerated in the FCRA, 15 USC § 1681b(a).

145.    The actions of Collins Asset Group, LLC were intentional and willful. Pursuant to 15 USC § 1681n and 1691q, any natural person who willfully fails to comply with any of its requirements under the FCRA, including the limitations on accessing a consumer report, or who knowingly and willfully obtains a consumer report without a permissible purpose and under false pretenses, is liable to that consumer in an amount equal to the sum of (i) any actual damages sustained by the consumer as a result of the failure (although in this action Plaintiff does not seek actual damages for violations of the FCRA) or $1,000.00, whichever is greater; (ii) such amount of punitive damages as the court may allow; and (iii) in the case of any successful action to enforce any liability under 15 USC § 1681n, the costs of the action together with reasonable attorneys' fees.

146.    As a result of their request and receipt of a consumer report under false pretenses or knowingly without a permissible purpose, Collins Asset Group, LLC is liable to Mr. Molgora in an amount equal to the sum of (i) $1,000.00; (ii) such amount of punitive damages as the court may allow; and (iii) the costs of this action together with reasonable attorneys' fees.

147.    As a result of Collins Asset Group, LLC's knowing and willful request and receipt of information regarding Mr. Molgora from a consumer reporting agency under false pretenses, Collins Asset Group, LLC is liable to Mr. Molgora in an amount equal to the sum of (i) statutory

damages of not less than $100.00 and not more than $1,000.00 for each such violation; (ii) such amount of punitive damages as the court may allow; and (iii) the costs of this action together with reasonable attorneys' fees.

## PRAYER

**WHEREFORE**, Plaintiff Pablo Molgora respectfully requests the following relief:

a.   A declaration that Defendants have committed the violations of law alleged in this action;

b.   An order enjoining and directing Defendants to cease violating N.Y. GBL § 349;

c.   Actual damages;

d.   Statutory damages under 15 U.S.C. § 1692k, N.Y. GBL § 349 and the FCRA;

e.   Treble and punitive damages under N.Y. GBL § 349;

f.   Punitive damages under the FCRA;

g.   Costs, disbursements and attorneys' fees under 15 U.S.C. § 1692k and N.Y. GBL § 349;

h.   Prejudgment and post judgment interest as allowed by law;

i.   All other relief, in law and in equity, both special and general, to which Plaintiff may be justly entitled.

## JURY DEMAND

Plaintiff demands a trial by jury.


Dated:  May 18, 2017
        Brooklyn, New York

Respectfully submitted,

                    /s/

24

_____

Ahmad Keshavarz
THE LAW OFFICE OF AHMAD KESHAVARZ
16 Court St., 26th Floor
Brooklyn, NY 11241-1026
Phone: (718) 522-7900
Fax: (877) 496-7809
*Attorneys for the Plaintiff*