# AHMAD KESHAVARZ

*Attorney at Law*

---

16 COURT ST., 26TH FLOOR  
BROOKLYN, NY 11241-1026

WWW.NEWYORKCONSUMERATTORNEY.COM  
E-mail: ahmad@NewYorkConsumerAttorney.com

PHONE: (718) 522-7900  
FAX: (877) 496-7809

March 11, 2018

<u>VIA ECF</u>
Hon. Sarah Netburn
United States Magistrate Judge
Southern District of New York
40 Foley Square, Room 430
New York, NY 10007

      Re:    **Opposition to Defendant Harvey Sharinn's supplemental [DE 63] request for a conference [DE 58] to stay Plaintiff's action against Defendant Harvey Sharinn.**

            *Pablo Molgora v. Sharinn & Lipshie, P.C.,* et al, Case No. 1:17-cv-03766-KBF

Dear Judge Netburn:

The undersigned represents Plaintiff in this case for violations of the Fair Debt Collections Practices Act ("FDCPA"), the Fair Credit Reporting Act ("FCRA"), and N.Y. General Business Law § 349.

**Procedural history.**

On February 8, 2018, Defendant Sharinn & Lipshie, P.C. ("S&L") filed a Suggestion of Bankruptcy. DE 53. Your Honor issued an order on February 9, 2018, staying the action against S&L and providing that the "stay does not affect the remaining defendants." The remaining parties were directed to proceed with discovery.

Defendant Harvey Sharinn ("Harvey Sharinn") filed[1] a letter for a pre-motion conference [DE 58] seeking to stay discovery as to him and to quash the deposition on non-party Amanda Moreno, the former managing attorney of S&L during the time of the FDCPA and GBL 349 violations against Plaintiff Pablo Molgora. S&L sought to quash the deposition of non-party Scott Sharinn ("Scott Sharinn"), a current attorney at S&L, based on lack of notice.[2]  The Court

---

[1] The undersigned assumes that, given the Chapter 11 bankruptcy filing of S&L that DE 58 was intended to be filed solely on behalf of Harvey Sharinn. Regardless, this response is addressed solely to Harvey Sharinn given the stay as to S&L.

[2] Harvey Sharinn disingenuously claims that Plaintiff requested the deposition of non-party Scott Sharinn on twenty four hours' notice. In fact, the parties scheduled the deposition weeks ago to take place on February 13, 2018, albeit

1

issued an order on February 12, 2018, quashing the Scott Sharinn deposition.[3] Plaintiff's February 15 notice of deposition also set the deposition of Defendant Harvey Sharinn for February 28, 2018.

On February 15, 2018 the Court held a telephone hearing on Harvey Sharinn's request to stay discovery as to himself. Counsel for Harvey Sharinn and for CAG argued, inter alia, that Plaintiff was seeking to take the deposition of Defendant Harvey Sharinn as a "back door" method to obtain discovery as the Defendant S&L, who is in Chapter 11 bankruptcy proceedings and thus subject to a stay. The Court instructed Plaintiff to draft a list of topics Plaintiff sought to explore with Harvey Sharinn and forward to opposing counsels. The undersigned did so. CAG had no objections to the deposition of Harvey Sharinn as to those deposition topics. Harvey Sharinn however objected.

On March 2, 2018, Defendant Harvey Sharinn's supplemental [DE 63] request for a conference [DE 58] to stay Plaintiff's action against Defendant Harvey Sharinn, and to quash any deposition on any topic as to him. Plaintiff responds as follows.

**Argument**.

Defendant Harvey Sharinn makes two arguments in support of its request for a discovery stay. HS argues the case should be stayed as to him because, he contends, 1) his liability is inextricably intertwined with S&L's liability and 2) continued litigation to HS jeopardizes S&L's bankruptcy. Plaintiff will respond to the second point first.

### 1. Continuing this action as to Harvey Sharinn would not jeopardize S&L's bankruptcy.

Harvey Sharinn argues that allowing discovery to proceed against him would deplete the assets of the bankruptcy estate. This is incorrect. The proceeds from the insurance policy at issue is not property of the estate because the policy is designed to pay third parties.

In response to discovery demands in the FDCPA lawsuits for an insurance policy that would cover the claims brought in those lawsuits, S&L produced the Insurance Policy attached as Exhibit A.

Courts have granted creditors' relief from the automatic stay to continue with litigation in a non-bankruptcy forum to fix the debtor's liability and obtain payment from insurance proceeds when the insurance proceeds are not property of the estate. *See, e.g., In re Scott Wetzel Services*, Inc., 243 B.R. 802 (Bankr. M.D. Fla. 1999).

---

in Scott Sharinn's capacity as the S&L corporate representative. Upon the filing of the Chapter 11 bankruptcy by S&L on Thursday, February 8, 2018, and the Court's *sua sponte* order the next day that discovery may proceed against the remaining Defendants, Plaintiff requested that the deposition of Scott Sharinn go forward in his individual capacity. The formal notice of the previously agreed deposition was sent on the next business day of the *sua sponte* order that discovery may proceed against the remaining defendants. Harvey Sharinn's representation in DE 58 that the notice of the deposition of Scott Sharinn was based on less than 24 hour notice was therefore misleading.

[3] The February 12, 2018 order states that "the notice of deposition of defendant Sharinn . . . is struck as unreasonable." Plaintiff understood this order as applying to the deposition of non-party Scott Sharinn.

"Property of the estate" includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1); *In re Scott Wetzel Servs., Inc.,* 243 B.R. 802, 803–05 (Bankr. M.D. Fla. 1999). An insurance policy may be considered property of the estate. However, where, as here, the policy is designed to pay claims to third parties harmed by the debtor, rather than to pay the debtor directly, the proceeds are not the property of the estate.   *See Matter of Edgeworth*, 993 F.2d 51, 55 (5th Cir.1993;; *In re Ressler*, No. 16-31062 (JAM), 2017 WL 1194643, at *2 (Bankr. D. Conn. Mar. 30, 2017); *In re Endoscopy Ctr. of S. Nevada, LLC,* 451 B.R. 527, 547 (Bankr. D. Nev. 2011); *In Re Scott Wetsl Servs, Inc., supra; In re Sfuzzi, Inc.,* 191 B.R. 664, 668 (Bankr.N.D.Tx.1996). In other words, the proceeds of a policy cannot be the property of the estate when the debtor itself has no "right to receive and keep those proceeds." *Matter of Edgeworth, supra.*

A helpful opinion that demonstrates this rule and that synthesizes the case law on the issue is *In re Scott Wetzel Services Inc. supra,* in which the bankruptcy court of the Middle District of Florida, Tampa Division, held that the insurance proceeds from the debtor's liability policies were not property of the estate and therefore were not protected by the automatic stay:

> "[T]he question of whether the proceeds of an insurance policy are property of the estate must be analyzed in light of the facts of each case. *See In re Sfuzzi, Inc.,* 191 B.R. 664, 668 (Bankr.N.D.Tx.1996).
>
>> In *Edgeworth*, supra, individuals holding a medical malpractice claim against the Chapter 7 debtor sought authority to pursue their lawsuit against the debtor in order to collect any judgment solely from the proceeds of the debtor's malpractice liability policy. The Fifty Circuit Court of Appeals held that the claimants could do so because 11 U.S.C. § 524(e) excludes the liability insurance carrier from the protection of the bankruptcy discharge and the proceeds of the policy were not property of the debtor's estate. In making this determination, the court stated,
>>
>>> The overriding question when determining whether insurance proceeds are property of the estate is whether the debtor would have a right to receive and keep those proceeds when the insurer paid on the claim. When a payment by an insurer cannot inure to the debtor's pecuniary benefit, then that payment should neither enhance nor decrease the bankruptcy estate.
>
> *Edgeworth*, supra at 55–56 (emphasis added)
>
>> Thus, in applying the *Edgeworth* test, a debtor will not have a cognizable interest in the proceeds of the typical liability policy because the proceeds will normally be payable only for the benefit of those harmed by the debtor under the terms of the insurance contract. *Edgeworth*, Id. at 55.
>
> …

*In re Scott Wetzel Servs., Inc.,* 243 B.R. 802, 803–05 (Bankr. M.D. Fla. 1999)

Liability insurance proceeds contrast sharply with other types of insurance – such as casualty, fire, or theft insurance – which courts have held are, in fact, property of an estate "because the debtor directly receives the proceeds as merely a change in form of estate property." Id., citing Sfuzzi, supra; See In re Asay, 184 B.R. 265 (Bankr.N.D.Tx.1995).

3

That this case concerns a Chapter 11 bankruptcy and not a Chapter 7 bankruptcy should not change the analysis. See In re Scott Wetzel, supra. Unlike other Chapter 11 bankruptcy matters where courts have upheld stays on claims for the proceeds of liability insurance because litigating would affect the debtor's reorganization, neither of Movants' lawsuits are mass torts that would "exhaust the insurance proceeds and would threaten the debtor's estate over and above the limits of the liability insurance policy." In re Sfuzzi, Inc., 191 B.R. 664, 668 (Bankr. N.D. Tex. 1996); cf In re Johns-Manville Corp., 40 B.R. 219, 223 (S.D.N.Y. 1984).

Even if they were, Molgora is consenting to limit his recovery to the extent of the insurance coverage.

Even if the proceeds of the insurance policy were the property of the estate, there is zero risk of depletion of those proceeds. The policy has coverage for two million dollars per claim, and two million dollars per year. The proceeds of the liability insurance policy are, by any conceivable measure, far, far, greater than any conceivable disclosed liabilities covered by the insurance policy at issue. The policy does not cover claims made by vendors of S&L, which are the largest number of claims listed by S&L. Rather, the insurance policy covers errors and omissions claims by S&L's own clients against S&L (not an issue in the listing of any creditors disclosed by Debtor), our claims by S&L for violations of the FDCPA, and related consumer statutes regarding robo calling or spam email violations. See Exh A, Policy pp. 17, 18. Debtor discloses the value of the Molgora and Hunter claims are approximately $20,000 and $40,000, respectively. In the class action FDCPA listed at $550,000, there is no judgment and, moreover, FDCPA statutory damages in a class action are limited to the lesser of $500,000 or 1 percent of net worth. Here, S&L discloses its net worth as a negative number, so the value of the class action could not exceed zero dollars in statutory damages. Therefore, Harvey Sharon has not met his burden to demonstrate, even if the proceeds from the insurance policy were the property of the bankruptcy estate, that "the policy actually protects the estate's other assets from diminution" because there is no proof that the policy would even come close to being exhausted by the claims S&L listed in its disclosures.

**2. Whether Harvey Sharinn's liability is intertwined with S&L's liability is immaterial.**

One of the principal cases cited by Mr. Sharinn actually supports Mr. Molgora's position. Florists' Transworld, Inc. v. New York Floral Group, Inc., 25 Misc. 3d 1225(A), 906 N.Y.S.2d 772 (NY Sup. Ct. Nov. 12, 2009). The first line of the quote is, "Special or unusual circumstances always involve an immediate adverse consequence for the debtor's estate." Here there are no adverse consequences for the debtors estate, if the case moves forward it will wholly be covered by insurance, Mr. Sharinn will pay no money, S&L will pay no money, and no creditor will be deprived of a potential asset. The courts in cases cited by Mr. Molgora don't apply the stay to the officer, because answering discovery is a burden, they issue a stay because it will cost someone in the estate money. Here that is not a concern, the insurance is covering the entirety of the claims, S&L and Mr. Sharinn need not pay any additional money if the case moves forward, and no creditor will have their recovery lessened if discovery moves

forward.  Put another way, there is no immediate adverse consequence to the debtors estate.  The cases cited by Mr. Sharinn  do not stand for the proposing that intertwined directors and corps always get a stay there must be special circumstances in which the interrelationship would result in harm to the estate if the case moved forward.  As stated above, here there is no harm to anyone because the action is wholly covered by insurance.  In addition there are only two cases covered by insurance and no other creditors will be affected and as to these cases both parties have consented to be limited to the amount of the policy which is so astronomical as to place no limit on their conceivable recovery.

*AH Robins* says there are unusual circumstances "when the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." (emphasis added). But this can't be true here since neither Harvey Sharinn nor S&L, has to personally pay in the event of a judgment against Harvey Sharinn. In the same way, there's nothing about proceeding with the case against Harvey Sharinn that would in any way stymie the successful reorganization of S&L. (The goal of preserving the ability to reorganize is what motivates the non-debtor stay.). See Chase Manhattan Bank v. Third Eighty-Ninth Assocs., 138 B.R. 144, 147 (S.D.N.Y.1992); In re United Health Care Org., 210 B.R. 228, 232 (S.D.N.Y. 1997).

Other cases cited by Harvey Sharinn are actually helpful to Plaintiff. "Courts in this circuit regularly refuse to extend a debtor corporation's § 362 stay to its non-debtor officers and principals." Gray v. Hirsch, 230 B.R. 239, 242 (S.D.N.Y. 1999).

> "It is well-established that stays pursuant to § 362(a) are limited to debtors and do not encompass non-bankrupt co-defendants." Teachers Ins. & Annuity Ass'n v. Butler, et al.,803 F.2d 61 (2d Cir.1986) (declining to extend stay of action against debtor partnership to its co-defendants, non-debtor individual partners). Applying Teachers Ins. & Annuity Ass'n, courts in this circuit regularly refuse to extend a debtor corporation's § 362 stay to its non-debtor officers and principals. See, e.g., Variable-Parameter Fixture Dev. Corp. v. Morpheus Lights, Inc., et al., 945 F.Supp. 603 (S.D.N.Y.1996) (non-debtor principal who, under state law, was debtor corporation's "alter ego"); E.I. Du Pont De Nemours & Co. v. Fine Arts Reprod. Co., et al., No. 93 Civ. 2462(KMW), 1995 WL 312505, *5 (S.D.N.Y. May 22, 1995) (non-debtor who was debtor corporation's president and  guarantor); Levesque v. Kelly Communication, Inc., et al.,164 B.R. 29, 30 (S.D.N.Y.1994) (non-debtor whose two debtor corporations bore his name); CAE Indus. Ltd., et al. v. Aerospace Holdings Co., et al., 116 B.R. 31, 32 (S.D.N.Y.1990) (non-debtor former Chairman, CEO, and Director of debtor corporation); In re Crazy Eddie Sec. Litig., 104 B.R. 582, 584 (E.D.N.Y.1989) (all non-debtor co-defendants affiliated with debtor corporation); Ripley v. Mulroy, et al., 80 B.R. 17, 18 (E.D.N.Y.1987) (non-debtor "president, sole common-stock shareholder, and controlling person" of debtor corporation).

*Id*.

Courts have held that § 362(a) does not stay actions against guarantors of the debtor's obligations;[4] general partners of a debtor partnership;[5] a member of a debtor-limited liability

---

[4] In re Advanced Ribbons and Office Products, Inc., 125 B.R. 259, 21 Bankr. Ct. Dec. (CRR) 913, Bankr. L. Rep. (CCH) ¶ 73909 (B.A.P. 9th Cir. 1991); In re Larmar Estates, Inc., 5 B.R. 328, 330, 6 Bankr. Ct. Dec. (CRR) 711, Bankr. L. Rep. (CCH) ¶ 67661 (Bankr. E.D. N.Y. 1980).

company;[6] co-obligors of the debtor;[7] officers or directors of the debtor; the shareholder of the debtor;[8] the assets of a non-debtor subsidiary of the debtor;[9] the sole member of a debtor-LLC;[10] the managing member of a debtor-LLC;[11] sureties of the debtor;[12] or joint employers.[13] See also New Jersey Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC, 564 B.R. 192, 195-96 (S.D.N.Y. 2016)(Citing Queenie, denying stay of action against officers of debtor, rejecting arguments that continuation would have adverse consequences, that a judgment would have preclusive effect, and that they are inextricably intertwined.)

Harvey Sharinn argues "[T]he automatic stay [under 11 U.S.C. § 362(a)] can apply to non-debtors, but normally does so only when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate." DE 58, p. 1, quoting Queenie, Ltd. v. Nygard Int'l, 321 F.3d 282, 287 (2d Cir. 2003). In support of its argument of "immediate adverse consequence" for S&L's estate, Harvey argues that he, as President of S&L, "is entitled to full contractual indemnity from S&L for any judgment that may be rendered against him in this action." Id. As a factual matter, Harvey Sharinn has not met his burden to provide evidence of a contract providing "contractual indemnity." In a case cited by Sharinn, the debtor had provided evidence of the "corporate charter" that contained "an indemnification clause." Id. at p. 2 citing to In re Lomas Fin. Corp., 117 B.R. 64, 68 (S.D.N.Y. 1990).

Harvey Sharinn hints that a finding of liability against himself could effectively be used as offensive collateral estoppel against S&L. This argument was expressly rejected by the Second Circuit in Queenie, Ltd., 321 F.3d at 288. "If such apprehension could support application of the stay, there would be vast and unwarranted interference with creditors' enforcement of their rights against non-debtor co-defendants." Id. In any event, as argued in the preceding paragraph, there is no indication that S&L would be required to pay any part of the claim against Harvey Sharinn. To the degree there could be any offensive collateral attack issues, Harvey Sharinn has the same interest in defeating an FDCPA and GBL 349 claim against him as S&L would against it. Therefore, there is no reason to think that, even if relevant, S&L's interest would be effectively harmed by the case proceeding against Harvey Sharinn.

---

[5] Patton v. Bearden, 8 F.3d 343, 24 Bankr. Ct. Dec. (CRR) 1388 (6th Cir. 1993); In re Bank Center, Ltd., 15 B.R. 64, 65–66, Bankr. L. Rep. (CCH) ¶ 68602 (Bankr. W.D. Pa. 1981); In re Aboussie Bros. Const. Co., 8 B.R. 302, 304, 7 Bankr. Ct. Dec. (CRR) 309, 3 Collier Bankr. Cas. 2d (MB) 684 (E.D. Mo. 1981).

[6] In re Xenon Anesthesia of Texas, PLLC, 510 B.R. 106, 110 (Bankr. S.D. Tex. 2014); Luppino v. York, 562 B.R. 894, 898 (W.D. Tex. 2016).

[7] In re Kirby, 151 B.R. 463 (Bankr. M.D. Tenn. 1992) (stay does not apply to debtor's parents who cosigned the debtor's loan); In re Van Shop, Inc., 8 B.R. 73, 75, 7 Bankr. Ct. Dec. (CRR) 217 (Bankr. N.D. Ohio 1980).

[8] In re Nashville Album Productions, Inc., 33 B.R. 123, 124, Bankr. L. Rep. (CCH) ¶ 69423 (M.D. Tenn. 1983) (directors and sole stockholders); In re Casgul of Nevada, Inc., 22 B.R. 65, 66, 9 Bankr. Ct. Dec. (CRR) 449, 6 Collier Bankr. Cas. 2d (MB) 1351, Bankr. L. Rep. (CCH) ¶ 68886 (B.A.P. 9th Cir. 1982) (officers of debtor).

[9] In re Xtra Petroleum Transport, Inc., 473 B.R. 430, 433-34 (Bankr. D. N.M. 2012) (creditor sought to foreclose on stock of debtor).

[10] Kreisler v. Goldberg, 478 F.3d 209, 213–14, 47 Bankr. Ct. Dec. (CRR) 233, Bankr. L. Rep. (CCH) P 80866 (4th Cir. 2007).

[11] In re Divine Ripe, L.L.C., 538 B.R. 300, 308–10, 61 Bankr. Ct. Dec. (CRR) 172 (Bankr. S.D. Tex. 2015).

[12] In re Xenon Anesthesia of Texas, PLLC, 510 B.R. 106, 109–12 (Bankr. S.D. Tex. 2014).

[13] Willis v. Celotex Corp., 978 F.2d 146, 149, 23 Bankr. Ct. Dec. (CRR) 1032, Bankr. L. Rep. (CCH) ¶ 74938, 23 Fed. R. Serv. 3d 1067 (4th Cir. 1992) (stay does not apply to debtor's surety company); Matter of Lockard, 884 F.2d 1171, 1178–79, 19 Bankr. Ct. Dec. (CRR) 1244, Bankr. L. Rep. (CCH) ¶ 73165 (9th Cir. 1989); Lynch v. Johns-Manville Sales Corp., 23 B.R. 750, 7 Collier Bankr. Cas. 2d (MB) 342 (S.D. Ohio 1982), order aff'd, 710 F.2d 1194, 10 Bankr. Ct. Dec. (CRR) 1282, 8 Collier Bankr. Cas. 2d (MB) 1301, Bankr. L. Rep. (CCH) ¶ 69317 (6th Cir. 1983) (stay does not operate against sureties, guarantors, or coobligors of debtor); In re Fintel, 10 B.R. 50, 51, 7 Bankr. Ct. Dec. (CRR) 531 (Bankr. D. Or. 1981).

Harvey Sharinn coyly indicates it has no objection to the case proceeding as to co-Defendant CAG. However, some of the liability of CAG turns on liability of Harvey Sharinn as CAG would be vicariously liable for the misconduct of Harvey Sharinn. Harvey Sharinn was the collection attorney acting as the agent of CAG.

## CONCLUSION

For these reasons Plaintiff prays this Court deny Harvey Sharinn's request for a stay of discovery.

Respectfully submitted,

/s/

Ahmad Keshavarz