# AHMAD KESHAVARZ
## Attorney at Law

---

16 COURT ST., 26TH FLOOR    WWW.NEWYORKCONSUMERATTORNEY.COM    PHONE: (718) 522-7900
BROOKLYN, NY 11241-1026    E-mail: ahmad@NewYorkConsumerAttorney.com    FAX: (877) 496-7809

August 6, 2018

VIA ECF AND HAND DELIVERY

Hon. Sarah Netburn
United States Magistrate Judge
Southern District of New York
40 Foley Square, Room 430
New York, NY 10007

    Re:    **Plaintiff's Letter motion for Local Rule 37.2 conference to enforce prior order [DE 81] compelling CLS manual.**
           *Pablo Molgora v. Sharinn & Lipshie, P.C., et al,* No. 1:17-cv-03766-KBF

Dear Judge Netburn:

    The undersigned represents Plaintiff in this case for violations of the Fair Debt Collection Practices Act ("FDCPA"), the Fair Credit Reporting Act ("FCRA"), and N.Y. General Business Law against a debt collection law firm Sharinn & Lipshie, P.C., it principal Harvey Sharinn (collectively "S&L") and their putative judgment creditor client Collins Asset Group ("CAG").

    Plaintiff seeks to enforce the prior order of the Court [DE 81] for the S&L Defendants to "produce the user manual for Commercial Legal Services." ("CLS") The Court correctly ruled in its July 25, 2018 ECF Order that "this document will not be burdensome and is relevant to determining meaningful attorney review."

1. **Plaintiff promptly demanded the CLS manual and promptly conferred with opposing counsel for production of the same.**

    At the June 13, 2018 deposition, the S&L corporate representative Scott Sharinn testified that S&L operates use the Commercial Legal Software ("CLS). *See* **Exh A (testimony excerpt).** He testified that this program is an "off the shelf" collection program that S&L purchased. S&L uses manuals which explain the operation of the program to train employees to use the software. The software appears to be from the following vendor http://collectionsoftware.com/

    Consequently, on June 22, 2018 the undersigned propounded discovery demands. Request for production # 3 sought the manuals for the collection software which Mr. Sharinn testified about. S&L did not answer Plaintiff's requests for production when due on July 23, 2018. The undersigned emailed opposing counsel multiple times indicating he needed the documents, especially RFP # 3, for the July 27, 2018 deposition of Amanda Moreno, the (now former) managing attorney at S&L. Opposing counsel indicated he would serve answers to the production demands by July 25, 2018. At 10:00 PM that evening S&L produced nothing but

1

objections to RFP # 3.[1] (*See* **Exh. B**)   The next morning the undersigned emailed opposing counsel severaltimes, and left voicemail messages on his work and cell numbers, stating he needed the CLS manual for the deposition of Ms. Moreno the next day, and would file a motion to compel the same. Counsel for S&L never responded. Counsel for CAG did respond promptly, though, with the suggestion that S&L should tell Plaintiff to "pound sand."

2. **The entire CLS manual is key for Plaintiff's meaningful attorney review and other claims.**

It now is clear that the operation of this software is a key fact in support of Plaintiff's claims. A key issue in this case is whether the handful of attorneys at S&L have a "meaningful attorney involvement" in its collection efforts, specifically in issuing the information subpoena and bank restraint, as well as a collection letter, seeking to collect from Mr. Molgora a judgment that was in fact vacated.

As a recent New York Times explains, CLS automates its entire collection practice, allowing for mass-filing of collection lawsuits, letters, etc. for small collection firm mills:

> As millions of Americans have fallen behind on paying their bills, debt collection law firms have been clogging courtrooms with lawsuits seeking repayment.
>
> Few have been as prolific as Cohen & Slamowitz, a Woodbury, N.Y., firm that has specialized in debt collection for nearly two decades. The firm has been filing roughly 80,000 lawsuits a year.
>
> With just 14 lawyers on staff, that works out to more than 5,700 cases per lawyer.
>
> How is that possible?
>
> The answer to that question is at the heart of a growing debate over the increasing use of the nation's legal system to collect on bad debts.
>
> Like many other firms, Cohen & Slamowitz relies on computer software to help prepare its cases. While many of the cases represent legitimate claims, critics say the lawsuits are too often based on inaccurate or incomplete information about the debtor or the amount owed.
>
> Collection law firms are able to handle such large volumes of cases because computer software automates much of their work. Typically, a debt buyer sends a law firm an electronic database that contains various data about consumers, including name, home address, the outstanding balance, the date of default and whether interest is still accruing on the account.

---

[1] **Request No. 3:** The documents that explain the operation of the collection software that S&L used in connection with Mr. Molgora's putative account (e.g. training manual, operations manual).
**Response:** The S&L Defendants object to this Request on the grounds that it is meant solely for harassment purposes, palpably improper, overly broad, unduly burdensome, and seeks documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. The S&L Defendants further object to this Request on the grounds that it is nothing more than a fishing expedition as there are no issues in this case surrounding the collection software. The S&L Defendants further object to this Request on the grounds that it seeks proprietary and confidential information which the S&L Defendants are not authorized to disclose.

> <mark>Once the data is obtained by a law firm, software like Collection-Master from a company called Commercial Legal Software can "take a file and run it through the entire legal system automatically," including sending out collection letters, summonses and lawsuits,</mark> said Nicholas D. Arcaro, vice president for sales and marketing at the company.

https://www.nytimes.com/2010/07/13/business/13collection.html  *See* **Exh. C (article).**

S&L should not be allowed to splice what sections of the CLS manual it believes are relevant, as S&L suggests in its July 26, 2018 letter for reconsideration [DE 82 p. 2] of the order compelling S&L to produce the CLS manual. The software operation, *as a whole*, is relevant to Plaintiff's meaningful attorney review claim. As outlined in the above NY Times article, it is the *entire program* that allows the *entire operation* of the firm to operate by automation. Again, the CLS software "can "take a file and run it through the entire legal system automatically," including sending out collection letters, summonses and lawsuits," according to the NY Times quote of the maker of the CLS program. That is the heart of Plaintiff's meaningful attorney review claim: the entire firm is an automated process.

Even as to Mr. Molgora specifically, the issue is the entire life-cycle of Molgora account with S&L. S&L contends that the execution on a vacated judgment was the result of an error that "the "intake" of Molgora's file from" CAG. DE 82, p. 2. This intake error S&L contends was the result of a "human error." S&L has never claimed this throughout the entire case. S&L has never identified any such person. But in any event, S&L is putting the intake process directly at issue, so Plaintiff is entitled to access the very beginning of the collection process in the CLS manual. Further, the issues in this case involve not just the sending of an information subpoena, but also a collection letter on the judgment. Therefore, the process for the generation and sending of collection letters is also important.

3. **The CLS operation is not secret and in any event their production would be protected by the agreed protective order in this case.**

The CLS operation is not a secret. For example, the company the licenses the software and provides 8 publically available training videos that "cover all the information in the Collection-Master Fundamentals training manual." **See Exh. D (CLS video training)** It is "the perfect series for new hires or anyone looking to brush up on the basics of Collection-Master." *Id*. Each video rents for $39.99. *Id*.

If S&L is concerned about the potential confidentiality of the materials they can designate the documents confidential pursuant to the agreed protective order entered in this case. [DE 34] The protective order is specifically designed to protect "information of a proprietary… nature." DE 34 ¶ 2(d). If S&L believes the licensor CLS needs to be put on notice, they have had ample time to have done so by now. no doubt S&L would have done so by now.

4. **Production of the CLS website manual is not difficult and, in any event, Plaintiff would be glad to incur the expense of a technician to download the information.**

S&L contends the CLS manual consists of "help" function hyperlinks on the program. S&L indicated in its July 23, 2018 motion for reconsideration [DE 82, p. 1] that it was not currently aware of how to download the information. However, S&L seems to suggest that perhaps it "could be instructed by CLS on how all of this data could somehow be downloaded for production in this litigation…" [DE 82 p. 2] Certainly by its deadline to respond to this letter, S&L would have contacted CLS to arrange for the logistics. In the alternative, S&L could

allow the office of Plaintiff's counsel to simply inspect the program itself, and also to hire a technician to download the information.

Respectfully submitted,
/s/
Ahmad Keshavarz
Attorney for Plaintiff

Enclosures (as stated)
cc: All counsel of record via ECF

## **CERTIFICATE OF CONFERENCE**

I have conferred with opposing counsel in good faith to attempt to resolve the issues raised in this letter but those attempts have failed.

Date: August 6, 2018
Brooklyn, NY
/s/
Ahmad Keshavarz